SHERIFF, CLARK COUNTY, NEVADA, Appellant and Cross–Respondent, v. JOHN WILLIAM HICKS. and JOHN BRANCH, Respondents and Cross–Appellants.

No. 7074

February 22, 1973                    506 P.2d 766

*Robert List,* Attorney General, Carson City; *Roy A. Woofter,* District Attorney, and *Charles L. Garner,* Chief Deputy District Attorney, Clark County, for Appellant and Cross-Respondent.

*Harry E. Claiborne,* of Las Vegas, for Respondents and Cross-Appellants.

## OPINION

By the Court, MOWBRAY, J.:
The grand jury in Clark County indicted Respondents John

William Hicks and John Branch in four counts for the following crimes: Murder,[1] attempted murder,[2] burglary,[3] and conspiracy to commit burglary.[4]

Hicks and Branch filed a habeas petition in the district court challenging the sufficiency of the evidence presented to the grand jury, upon which the counts in the indictment were predicated. NRS 172.155.[5]

The district judge, after a hearing on the habeas petition, found that there was a lack of probable cause to sustain the murder and attempt murder counts, and the court dismissed

[1]"COUNT I—Murder

"did then and there wilfully, unlawfully and feloniously kill and murder ROBERT LEE MURPHY, a human being, said killing being committed while the said ROBERT LEE MURPHY, deceased, and Defendants JOHN WILLIAM HICKS and JOHN BRANCH were jointly engaged in the perpetration or attempt to perpetrate burglary of that certain building located at 3595 Haverford Street, Las Vegas, Clark County, Nevada, occupied by MELVYN A. MYERS, the said ROBERT LEE MURPHY being shot and killed during the commission or attempted commission of said burglary."

[2]"COUNT II—Attempted Murder

"did wilfully, unlawfully, feloniously, and with malice aforethought, attempt to kill and murder MELVYN A. MYERS, a human being, said attempted murder being committed by Defendants, together with ROBERT LEE MURPHY, deceased, entering that certain building located at 3595 Haverford Street, Las Vegas, Clark County, Nevada, then and there occupied by MELVYN A. MYERS, with the intent to commit a felony, to-wit, murder of the said MELVYN A. MYERS."

[3]"COUNT III—Burglary

"did wilfully, unlawfully, and feloniously, enter, with the intent to commit a felony, to-wit, murder of MELVYN A. MYERS, that certain building located at 3595 Haverford Street, Las Vegas, Clark County, Nevada, then and there occupied by the said MELVYN A. MYERS."

[4]"COUNT IV—Conspiracy to Commit Burglary

"did then and there meet with ROBERT LEE MURPHY, deceased, and between themselves, and each of them with the other, wilfully and unlawfully conspire to commit the crime of Burglary of that certain building located at 3595 Haverford Street, Las Vegas, Clark County, Nevada, occupied by MELVYN A. MYERS, with the intent to commit a felony, to-wit, murder of MELVYN A. MYERS."

[5]NRS 172.155:

"1. The grand jury ought to find an indictment when all the evidence before them, taken together, establishes probable cause to believe that an offense has been committed and that the defendant has committed it.

"2. The defendant may object to the sufficiency of the evidence to sustain the indictment only by application for a writ of habeas corpus. If no such application is made before the plea is entered, unless the court permits it to be made within a reasonable time thereafter, the objection is waived."

those counts. The court did find, however, that the proceedings before the grand jury established sufficient evidence to support the counts of burglary and conspiracy to commit burglary.

The State has appealed from the district court's order dismissing the counts of murder and attempted murder, while the respondents have cross-appealed from the court's order sustaining the counts of burglary and conspiracy to commit burglary.

### 1. *The Facts.*

On May 30, 1972, at 5 o'clock in the morning, Respondents Hicks and Branch, in the company of Robert Murphy, who is now deceased, drove in Hicks's car to within a block or so of the residence of one Melvyn Myers in Las Vegas, Nevada. Hicks and Murphy left the car, walked over to the residence, and rang the front door bell. Myers awoke, took a pistol from a nightstand drawer near his bed, and went downstairs to answer the door. Looking through the curtain on the door, he saw and recognized Hicks standing outside. Holding his gun down at his side, Myers started to open the door when Murphy, whom he had not seen at the door, lunged from the side and forced his entrance into the residence. Pulling a pistol from inside his shirt, Murphy struck Myers on the head, knocking him to the floor. With Murphy standing over him, gun in hand, Myers fired several shots from his own weapon; four shots struck Murphy—two of them with lethal effect. Hicks, meanwhile, seeing the gun in Myers's hand, ran back to the car. During all of this time, Branch remained in Hicks's vehicle parked near the front of Myers's residence. After Hicks returned to the vehicle, he and Branch remained in the parked car waiting for Murphy to join them, until they saw a police patrol car draw up at the Myers residence, at which time they exited the scene, in the car.

### 2. *The Murder and Attempted Murder Counts.*

The State, in attempting to hold Hicks and Branch for the murder of their accomplice Murphy, has relied on the felony-murder rule, i.e., where a person is killed during the commission of a felony, a cohort involved in the commission of that principal crime may also be charged with murder. In support of its position, the State has relied heavily on Taylor v. Superior Court, 477 P.2d 131 (Cal. 1970). However, as the California Court stated in Taylor, the felony-murder rule does not apply when the killing is done by the victim of the

crime, because in such a case the malice aforethought necessary for murder is not attributable to the accomplice felon. The killing in such an instance is done, not in the perpetration of, or an attempt to perpetrate, a crime, but rather in an attempt to thwart the felony. NRS 200.120.[6] The application of the felony-murder rule to a situation involving felons charged with the murder of a cofelon killed by another in resisting the commission of a felony has been widely rejected. The leading case is Commonwealth v. Redline, 137 A.2d 472 (Pa. 1958), which has been followed in many jurisdictions. State v. Garner, 115 So.2d 855 (La. 1959); People v. Wood, 167 N.E.2d 736 (N.Y. 1960); People v. Austin, 120 N.W.2d 766 (Mich. 1963); Commonwealth v. Balliro, 209 N.E.2d 308 (Mass. 1965); People v. Morris, 274 N.E.2d 898 (Ill. App. 1971).

It is true that in Taylor the California court, upon a rather new and unique theory of vicarious liability based upon negligence concepts of proximate cause, natural consequences, and implied malice, did hold a cofelon to answer for the murder of his accomplice, who was shot and killed by the victims of the robbery. However, we are not persuaded by the Taylor reasoning, and we reject it.[7] We therefore sustain the ruling of the district court in dismissing the count of murder.

The district judge, after reviewing the transcript of the proceedings before the grand jury, found that there was insufficient evidence in the record to show probable cause that Hicks and Branch had attempted to murder Myers, and the court also dismissed that count of the indictment.[8] We, too, have reviewed

---

[6]NRS 200.120:

"Justifiable homicide is the killing of a human being in necessary self-defense, or in defense of habitation, property or person, against one who manifestly intends, or endeavors, by violence or surprise, to commit a felony, or against any person or persons who manifestly intend and endeavor, in a violent, riotous or tumultuous manner, to enter the habitation of another for the purpose of assaulting or offering personal violence to any person dwelling or being therein."

[7]As the district judge stated in his written decision in rejecting Taylor, "A rose, the felon murder rule, is still a rose by any other name, vicarious liability."

[8]The district judge, in his written decision, ruled, in part:

"As measured by the standard of probable cause, the transcript of the proceedings before the grand jury establishes sufficient evidence to support the charges of burglary and conspiracy to commit burglary. [See Robertson v. Sheriff, 85 Nev. 681, 462 P.2d 528 (1969).] However, again measured by probable cause, the transcript fails to support

that record and fail to find sufficient evidence therein to establish the necessary probable cause required to hold the respondents to answer the charge of attempted murder of Myers. We therefore sustain the ruling of the lower court in dismissing Count II of the indictment.

3. *The Burglary and Conspiracy to Commit Burglary Counts.*

One of the essential elements of burglary is the entry of a building with the "intent to commit grand or petit larceny, *or any felony.*" (Emphasis added.) NRS 205.060, subsection 1.[9] In the burglary and conspiracy to commit burglary counts, the State has predicated the necessary intent to commit "any felony" on the charge of attempted murder of Myers. Since the lower court properly struck down the attempted murder count, the counts of burglary and conspiracy to commit burglary as they are presently drafted are fatally defective, and they, too, must fall. Cf. Simpson v. District Court, 88 Nev. 654, 503 P.2d 1225 (1972).

It is ordered that the district court's ruling dismissing Counts I and II of the indictment be sustained. It is further ordered that the case be remanded to the district court with instructions to dismiss Counts III and IV without prejudice to a new and sufficient accusation.

THOMPSON, C. J., and GUNDERSON, BATJER, and ZENOFF, JJ., concur.

---

the charge of attempted murder. That the defendants and their deceased cohort intended to commit an assault and battery upon Myers may be inferred from the evidence in that the cohort forced his way into the Myers home, stated words to the effect that 'this will keep your mouth shut,' and struck Myers with the barrel of a pistol[;] such evidence does not establish an intent to commit murder."

[9]NRS 205.060, subsection 1:

"1. Every person who, either by day or night, enters any house, room, apartment, tenement, shop, warehouse, store, mill, barn, stable, outhouse or other building, tent, vessel, vehicle, vehicle trailer, semitrailer or housetrailer, or railroad car, with intent to commit grand or petit larceny, or any felony, is guilty of burglary."