THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, *v.* GLENN HICKMAN *et al.*, Defendants-Appellees.

(No. 72-32;

Third District—June 8, 1973.

*Rehearing denied July 10, 1973.*

Martin Rudman, State's Attorney, of Joliet, for the People.

Thomas E. Hett, of Chicago, for appellees.

Mr. JUSTICE SCOTT delivered the opinion of the court:

Robert Bruce Papes, Anthony Rock and Glenn Hickman were indicted by the Grand Jury of Will County for the offenses of murder and burglary. After trial by jury the defendants Rock and Hickman were found guilty of the crimes of murder, burglary and criminal damage to property. Papes was found guilty of burglary and criminal damage to

property but not guilty of murder. The defendants Hickman and Rock filed a motion to arrest the judgment of guilty of murder and burglary. This motion was partially granted by the trial court in that the judgment of guilty for the crime of murder was arrested.

Papes was placed on probation for a term of two years for the offense of burglary and as a term of probation was ordered to serve six months at the Illinois State Farm at Vandalia. The defendant Rock was sentenced by the trial court to a term of not less than one (1) year nor more than one (1) year and one (1) day in the penitentiary for the offense of burglary. The defendant Hickman was placed on probation for the offense of burglary for a period of two years and as a term of probation he was ordered to serve nine months in the Illinois State Farm at Vandalia.

The State has appealed from the order of the trial court arresting the judgment of murder as to the defendants Rock and Hickman.

The factual situation which resulted in the trial of the defendants occurred on the evening of April 2, 1970, at which time seventeen policemen from the police force of the city of Joliet were participating in a surveillance of a building known as the Illinois Wine and Liquor Warehouse. Among the officers involved in the surveillance was Sergeant James Cronk, who shortly before 10:15 P.M. noticed Robert Bruce Papes and the defendant Anthony Rock pass by the warehouse several times in a Cadillac automobile. Later several officers saw a Chevrolet automobile enter an alley south of the warehouse and stop at a side door of the building. Several people left the automobile and disappeared from sight into the doorway. The driver of this vehicle, who was Papes, walked a short distance, made a surveillance of the area, returned to the automobile and then drove out of the sight of the officers. After several minutes Papes was again seen walking in the alley and after once more looking over the area he again disappeared from the sight of the police officers when he went to the location of the side doorway of the warehouse. It was within a matter of a few seconds of Papes' disappearance that Sergeant Cronk saw three individuals exit from the side doorway of the warehouse, at which time he signaled the officers to close in from various directions towards a concrete parking lot which was to the rear and west of the warehouse.

Papes and the defendants Rock and Hickman upon seeing the officers approaching them proceeded to run. Papes ran in a southwesterly direction and the defendants Rock and Hickman in a northwesterly direction toward some bushes located at the northwest corner of the parking lot. Papes was apprehended when a Sergeant Erwin pointed a shotgun at him. Papes submitted to an arrest and upon his person was found a

loaded pistol and additional cartridges. As the defendant Rock was running he was carrying a small object in his hand. The defendant Hickman was carrying an attache case as he was fleeing.

The defendants Rock and Hickman ran through the bushes while in the meantime Sergeant Cronk ran to the rear of the warehouse where he noticed two people running in a northwesterly direction. Sergeant Cronk yelled "halt—police" several times but his commands were ignored. He lost sight of the two fleeing individuals but within seconds thereafter saw a man carrying a handgun running towards the bushes at the northwest corner of the parking lot. Sergeant Cronk, believing that this approaching individual was one of the burglars of the Illinois Wine and Liquor Warehouse, and referring to the handgun, ordered the person to "drop it." When there was no compliance to this warning Sergeant Cronk fired his shotgun at the individual, who was later discovered to be Detective William Loscheider of the Joliet police force. Loscheider was killed by this shot from his fellow officer's gun.

Approximately one-half hour later the defendants Rock and Hickman were arrested as they were walking on a street approximately two and a half blocks from the warehouse. Neither of the defendants had a weapon on his person.

Subsequent to the fatal shooting of Loscheider the police officers discovered that entry to the warehouse had been made by removing a panel from the side door and also by removal of the lock from the door.

During the trial of the defendants an analyst from the Illinois Bureau of Identification Crime Laboratory testified that the tool marks found on the side door of the warehouse were made by a screwdriver found in an attache case which was discovered on the parking lot to the rear of the warehouse.

During the course of the trial the court struck from the murder count of the indictment as to the defendants Rock and Hickman all allegations as to the defendants arming themselves in furtherance of a conspiracy to burglarize the Illinois Wine and Liquor Warehouse.

The foregoing constitutes a brief summary of the unusual factual situation which led to this appeal and which presents to us the question as to whether or not the trial court erred when it entered an order arresting a judgment of guilty of murder against the defendants Rock and Hickman which had been returned against them by the jury.

More narrowly presented we must determine whether the actual shooting which caused the death of an innocent victim must have been performed by the defendants or someone acting in concert with them in order to comply with the requirements of the felony-murder doctrine.

Our criminal code contains statutory provisions relating to the felony murder doctrine, being Ill. Rev. Stat., ch. 34, sec. 9—1(a)(3), which provides:

"(a) A person who kills an individual without lawful justification commits murder if, in performing the acts which cause the death:
* * *
(3) He is attempting or committing a forcible felony other than voluntary manslaughter."

The defendants urge an interpretation of this statute to the effect that the person who kills or performs the acts which cause death must be the same person as the one who is attempting or committing a forcible felony before liability for murder can be imposed.

■■ While the syntax of the words involved in our felony-murder statute could be interpreted on the restrictive and narrow lines urged by the defendants, we do not believe that in statutory construction we are bound to consider only the wording used in the statute. The court in construing a statute may consider the notes and reports of the commission pursuant to which the statutory provision was adopted. (I.L.P. Statutes, ch. 6, sec. 126, p. 115, see 1952 Op. Atty. Gen. 159.) Turning our attention to the committee comments in regard to the statute in question we find on page 9 of Smith Hurd Ill. Ann. Stat., ch. 38, the following comments in regard to the application of sec. 9—1(a)(3), the felony-murder provision:

"It is immaterial whether the killing in such a case is intentional or accidental, or is committed by a confederate without the connivance of the defendant. * * * or even by a third person trying to prevent the commission of the felony."

In support of the committee comment that one can be guilty of murder where the killing resulted from the act of a third person trying to prevent the commission of a felony, there is cited the case of *People v. Payne*, 359 Ill. 246, 194 N.E. 539.

In *Payne* we have a factual situation where armed robbers entered the home of two brothers. One of the brothers discharged a weapon to prevent the robbery as did one of the robbers. The other brother was killed and it could not be determined whether he was killed by his brother or the robber. Our Supreme Court in affirming the defendant's conviction of murder stated:

"Where several persons conspire to do an unlawful act, and another crime is committed in the pursuit of the common object, all are alike guilty of the crime committed, if it is a natural and probable consequence of the execution of the conspiracy. * * * It reasonably might be anticipated that an attempted robbery

would meet with resistance, during which the victim might be shot either by himself or someone else in attempting to prevent the robbery, and those attempting to perpetrate the robbery would be guilty of murder."

There are other cases in Illinois where our reviewing courts have recognized that a defendant may be criminally responsible for the killing of another during the commission of a forcible felony even though no certainty exists that the defendant or his cohorts performed the fatal act. (See *People v. Krauser,* 315 Ill. 485, 146 N.E. 593; *People v. Danner,* 105 Ill.App.2d 126, 245 N.E. 2d 106.) Our Supreme Court in the *Payne* case, however, was confronted with a factual situation quite similar to the one presented to us in the instant case and in *Payne* the court clearly adopted the theory that a defendant and co-conspirators acting in concert with him can be held responsible for a killing of an innocent third party during the commission of a forcible felony even though the killing was not actually done by a person acting in concert with the defendant or his co-conspirators.

■ We hold it to be of no consequence that in the instant case Detective Loscheider was killed at a time when the defendants were attempting to escape. Our Supreme Court has held that the period of time involved in an escape with immediate pursuit after committing a crime becomes part of the crime itself. (See *People v. Golson,* 32 Ill. 2d 398, 207 N.E. 2d 68.) In *Golson* the court quoted language from the opinion in *People v. Bongiorno,* 358 Ill. 171, 192 N.E. 856, wherein it was stated:

"* * * [W]here two or more persons engage in a conspiracy to commit robbery and an officer is murdered while in immediate pursuit of either or both of the offenders who are attempting to escape from the scene of the crime with the fruits of the robbery, each of the conspirators is guilty of murder, for the crime had not been completed at the time inasmuch as the conspirators had not won their way to a place of safety. We pointed out that a plan to commit robbery would be futile if it did not comprehend an escape with the proceeds of the crime, and that unless the plan was to kill any person attempting to apprehend the conspirators at the time of or immediately upon gaining possession of the property, the plan would be inane."

The defendants both in the trial court and in this appeal urge that the applicable law is set forth in the case of *People v. Morris,* 1 Ill. App. 3d 566, 274 N.E. 2d 898. In *Morris* the defendant and two cohorts entered a restaurant armed for the purpose of committing a robbery. A struggle ensued between a patron and one of the cohorts during which

gunfire erupted and the cohort was killed. The defendant Morris, one of the would-be robbers, was charged with murder of his co-conspirator under the theory of the felony-murder doctrine and was convicted of the crime of murder by the trial court. The reviewing court reversed the trial court holding that the felony-murder doctrine is not applicable against a surviving felon when a co-felon is justifiably killed during commission of a forcible felony.

We do not believe that the rationale of the *Morris* case is controlling in the instant case since *Morris* presented a factual situation which differed in one very significant detail. In *Morris,* unlike the case before us, the victim was not an innocent third party. In *Morris* the victim was not free from culpability but was in fact an individual who was attempting to commit a felony. We do not hold that the character of the victim is controlling merely because he was a felon, nor do we indulge in the fanciful theory that the victim being a felon assumed the risk and thereby constructively consented to his death, but we do hold that he assisted in setting in motion a chain of events which was the proximate cause of his death and therefore in the criminal law as in the civil law there is no redress for the victim.

■■ Clearly the case of *People v. Payne,* 359 Ill. 246, 194 N.E. 539, and the case now before us are distinguishable from *Morris* in that unlike *Morris,* innocent parties were killed. We interpret *Payne* as setting forth the rule that he whose act causes in any way, directly or indirectly, the death of an innocent victim is guilty of murder by virtue of the felony-murder doctrine.

■■ We are aware of the conflicting views from other jurisdictions concerning the application of the felony-murder doctrine in cases such as we are now considering, but we are only concerned with following the law as it has been established in our own state, and therefore hold that *Payne* is controlling in the instant case and that the defendants are guilty of the crime of murder. There should be no doubt about the "justice" of holding a felon guilty of murder who engages in a robbery followed by an attempted escape and thereby inevitably calls into action defensive forces against him, the activity of which results in the death of an innocent human being.

Mr. Justice Cardozo in "The Nature of the Judicial Process", pages 66, 67, said, and we believe wisely, that "When they (Judges) are called upon to say how far existing rules are to be extended or restricted, they must let the welfare of society fix the path, its direction and its distance. * * * The final cause of law is the welfare of society."

Following the precepts of Justice Cardozo we need not extend the existing rules in order to protect society, but are only required to follow

418

the law as set forth in the case of *Payne*. This we do and accordingly direct that the order of the trial court of Will County arresting the judgment of murder as to the defendants in this case be reversed and that further this case is remanded for sentencing of the defendants for the crime of murder.

Reversed and remanded.

ALLOY, P. J., and DIXON, J., concur.