THE PEOPLE OF THE STATE OF NEW YORK *v.* PAUL LABARBERA
and VASIL PETRO, alias WILLIAM PETERS, Defendants.

Supreme Court, Chautauqua County, April 23, 1936.

*David L. Brunstrom, District Attorney [Edwin G. O'Connor, Assistant District Attorney, of counsel], for the plaintiff.*

*Carlson & Alessi [Michael D. Lombardo of counsel], for the defendant Paul LaBarbera.*

*John S. Leonard, for the defendant Vasil Petro, alias William Peters.*

HARRIS, J. Motion by each defendant to dismiss indictment as against himself on the ground that an examination of the minutes of the grand jury shows the evidence submitted to said grand jury to be insufficient to warrant such indictment. Motion by the district attorney that in event of the dismissal of such indictment he be permitted to resubmit the case to a grand jury. Motion by the district attorney to be permitted to amend the indictment as to its second count.

The indictment is in three counts and charges both defendants as follows: First count, with the crime of murder in the first degree committed while engaged in the commission of a felony (arson in the second degree) and resulting in the killing of one Peter Joseph Gagliano; second count, with the crime of arson in the second degree, consisting of willfully setting fire to and burning an uninhabited building in which there was not at the time a human being; third count, conspiracy consisting of conspiring to commit the crime of arson in the second degree at the premises described in the second count.

The district attorney seeks to amend the second count of the indictment so as to describe the building burned as being within the curtilage of an inhabited building in which there was at the time a human being, so that the inhabited building became endangered, and further to describe such crime of arson in the second degree as being done with the intent to prejudice or defraud the insurer of the premises. In reference to the amendment in the second count it would become necessary to deny the motion of the district attorney to amend so as to set forth the fact that the building was within the curtilage of an inhabited building because the grand jury minutes contain no reference to the surroundings of the building burned. There is, however, sufficient testimony in the grand jury minutes to warrant the amendment so as to set forth the intent to defraud the insurer.

Each defendant claims that there was insufficient evidence before the grand jury to sustain any count of the indictment, and this question is raised specifically as to the criminal agency of such defendant. Each defendant further claims that considerable illegal testimony was received by the grand jury. An examination of the

minutes shows that much hearsay testimony was given before the grand jury, but this court understands the rule to be that if there is sufficient lega testimony to warrant the indictment, then the indictment should stand. (See *People* v. *Osborne*, 158 N. Y. Supp. 572, and authorities therein discussed.)

In brief, the legal evidence before the grand jury and the inferences which the grand jury could draw from such legal evidence were as follows: That prior to the death of the said Gagliano the two defendants arranged for the purchase and the taking of title by the defendant Petro of a mortgage on the premises ater burned. The title to such premises had been abandoned by the owner of the equity thereof on account of unpaid taxes. On behalf of the two defendants, the defendant LaBarbera employed the decedent Gagliano, with the promise of a fee of $300, to set fire to the premises. Said Gagliano employed one Musso to assist him in such fire setting and went to the premises w th the said Musso. Musso remained on one floor while Gagliano went to the top floor, and while Gagliano was arranging gasoline and other material and electrical apparatus for the purpose of setting fire to the place there was an explosion and Gagliano was so severely burned in the explosion that he died. Part of the evidence from which the inference can be drawn that LaBarbera employed Gagliano for the task is based on a conversation held after the fire between Mrs. Gagliano and the defendant LaBarbera in which in substance she accused him of hiring her husband to set fire to the place. The conversation had to do with the matter of the $300 to which reference has been made above. In reply to Mrs. Gagliano's accusation LaBarbera replied that the $300 transaction had to do with a mortgage, but later, upon her pressing the point of the hiring to set fire to the place, he said in substance, " What are you going to do about it?" and promised that when the owner of the mortgage (Petro) secured his money he would pay her a portion of this sum that she had demanded.

In order to sustain the indictment it is necessary that the district attorney should have had a legal right to present to the grand jury Mrs. Gagliano's testimony as to this conversation. The defendants claim that in view of LaBarbera's denial such conversation was inadmissible. (*People* v. *DePaulo*, 235 N. Y. 39.) In the *DePaulo* case it was held that a flat denial of an accusation makes inadmissible the testimony as to the accusation, but as said by the court in such case (at p. 42): " A statement made in the presence of another charging him with responsibility for a given act and made under such circumstances as enables the party so charged freely to respond, is competent as evidence by way of

admission when the party charged does not deny but by word or act acquiesces in the truth of the statement."

The jury had a right to take the denial of LaBarbera and his later remark and to infer from such later remark that his denial was of no value and that his later remark was an acquiescence in the truth of the accusation of Mrs. Gagliano that her husband had been hired by the defendant LaBarbera to set fire to the building.

The count charging conspiracy is attacked by each defendant on the ground that there is no proof of an overt act (Penal Law, § 583); but section 583 specifically provides that if the accusation is of a conspiracy to commit arson there is no necessity for the proof of an overt act. In addition to this, the hiring of Gagliano if it occurred would be an overt act to carry out the conspiracy.

In view of the above the court is of the opinion that the count charging arson in the second degree is based upon evidence which was sufficient to warrant the grand jury in indicting for arson in the second degree for the purpose of defrauding an insurer and for conspiracy to commit a crime, to wit, the crime of arson in the second degree.

The court now turns to the accusation contained in the first count, which charges murder in the first degree. This count is found under that portion of section 1044 of the Penal Law which provides as follows:

" The killing of a human being, unless it is excusable or justifiable, is murder in the first degree, when committed: * * *

" 2. * * * without a design to effect death, by a person engaged in the commission of, or in an attempt to commit a felony, either upon or affecting the person killed or otherwise."

In regard to this count each of the defendants contends that even though he had conspired to commit the crime of arson, and the death of Gagliano came about in the carrying out of such conspiracy and in the commssion of the crime of arson, the fact that the man who actually set fire to the place or was setting fire to the place brought about his own death by the act of attempting to set fire or setting fire, excludes such a death as being murder under the subdivision of section 1044 of the Penal Law as above quoted. This section of the Penal Law since its enactment has been the subject of much comment, and the means of bringing about the conviction of many felons for murder. Its exact meaning has been the cause of discussion in our courts. (*People* v. *Greenwall*, 115 N. Y. 520.) The courts of this and other jurisdictions have reached three conclusions in reference to the quoted portion of that subdivision or laws similar to it and their meaning:

(1) That the fact that one or many are engaged in committing a felony, the natural and probable result of which is the death of a human being, makes it unnecessary that there be an intent to take the life of the person killed; (2) that all of the persons engaged in the commission of such felony become liable in the same manner as the killer for a death which occurs as the natural and probable result of the commission of the felony; (3) that the death must be brought about through the act of one of those associated in the felony. (*People* v. *Greenwall, supra; People* v. *Sobieskoda*, 235 N. Y. 411; *People* v. *Udwin*, 254 id. 255; *Commonwealth* v. *Campbell*, 7 Allen [Mass.], 541; *Butler* v. *People*, 125 Ill. 641; 18 N. E. 338; *State* v. *Oxendine*, 187 N. C. 658; 122 S. E. 568; *People* v. *Ferlin*, 203 Cal. 587; 265 P. 230.)

The case last above cited (*People* v. *Ferlin*) is in facts similar to the case at bar. There the perpetrator of the arson was killed through his own act. Search of counsel and of the court has failed to show any other case with similar facts as those herein. The district attorney here claims that the *Ferlin* case is to be distinguished from the case under discussion because of the definition of the crime in the California statute (Cal. Penal Code, § 189), which, for the purposes of this memorandum, is quoted as follows: "All murder which is * * * committed in the perpetration or attempt to perpetrate arson * * * is murder of the first degree," and the further definition contained in the Penal Code of the State of California of murder which is " the unlawful killing of a human being, with malice aforethought " (Cal. Penal Code, § 187). Under our statute murder is a criminal homicide. (Penal Law, § 1044.) Homicide is defined by section 1042 of our Penal Law as " the killing of one human being by act, procurement or omission of another." The killing of Gagliano occurred by his own act, and, therefore, was not by the act of another, and so his death does not come within the definition of criminal homicide. The liability of the conspirators for a death occurring during a felony may be described as the liability of one for the acts of his agent. (*People* v. *Udwin, supra.*) If Gagliano had killed another, as Udwin did, then under the proof before the grand jury the grand jury would have been warranted in bringing the accusation of murder in the first degree against the defendants. However, in view of the fact he killed himself he did not commit homicide as defined in the statute of this State, and if he did not commit homicide, certainly his associates in crime cannot be held for homicide. The proof, the authorities above cited, and the reasoning herein contained, lead the court to the conclusion that the indictment for murder in the first degree should not stand as against either defendant.

Because the proof at present only leads to the conclusion that Gagliano died by his own act, the district attorney is not permitted to resubmit to the grand jury evidence that would lead to another indictment for murder in the first degree. If later it should develop that the district attorney has proof that the fire was set by some person other than Gagliano, he has a right to apply to a court for permission to resubmit with a view of securing an indictment for murder.

It may be that the district attorney wishes to resubmit to a grand jury a charge of arson so as to sustain an indictment for arson in the second degree on the theory that an uninhabited building within the curtilage of an inhabited building was set on fire, and if so, he is permitted so to resubmit that question.

An order in accordance with the above may be presented for signature.