254 So.2d 548 (1971)
STATE of Florida, Appellant,
v.
Richard Eugene WILLIAMS, Appellee.
No. 70-606.
District Court of Appeal of Florida, Second District.
October 27, 1971.
Rehearing Denied December 10, 1971.
*549 Joseph P. D'Alessandro, State's Atty., and Louis S. St. Laurent, Chief Asst. State's Atty., Fort Myers, for appellant.
C. Harris Dittmar, Jacksonville, for appellee.
McNULTY, Judge.
The court below dismissed with prejudice an indictment charging Richard Eugene Williams with the felony-murder of one Hannsen and the state appeals. We affirm.
It undisputedly appears for purposes of the instant case that appellee Williams and another owned a hunting camp in Collier County. Williams conspired with and procured the aforesaid Hannsen to unlawfully burn certain buildings in the camp. In pursuance thereof Hannsen went into the campsite alone (Williams being actually out of the county) and was fatally burned in an ensuing fire while attempting to commit the arson aforesaid. The trial court found that Hannsen "met death at his own hands from injuries suffered when he accidentally set fire to himself while attempting to burn certain buildings * * *", and the state does not dispute this finding. Whereupon the court dismissed the indictment as not stating a cause of action under the felony-murder statute, § 782.04, F.S.A.
The precise question presented is unique to Florida criminal jurisprudence. We have found no Florida decision dealing with the responsibility of a felon for the death of his co-conspirator which occurs during the perpetration of one of the felonies enumerated in our first degree murder statute.[1] There are, to be sure, Florida cases which do hold that a killing need not actually be done by any of the perpetrators thereof in order to support a felony-murder charge; but in those cases the person killed was a policeman killed by a fellow officer or an innocent bystander killed by the intended victim of the felony in perpetration while resisting or attempting to prevent such felony.[2] As will be seen, even though a felony-murder charge was upheld in those cases they are not inconsistent with what we hold hereinafter on the peculiar facts of this case.
Other states have dealt with the question, however, and even, indeed, in an arson context; but the results are in conflict. *550 First, we note that in Commonwealth v. Bolish,[3] a Pennsylvania case principally relied upon by the state, it was held that in a conspiracy to commit arson a conspirator may be charged with felony-murder if his co-conspirator dies in the contemplated arson. We note further, however, that that case has been effectively diluted by later Pennsylvania cases. When that case itself subsequently came before the Pennsylvania court a second time,[4] for example, it was stressed that the appellant was present at the scene of the arson and was an active participant. A still later Pennsylvania case,[5] in distinguishing Bolish, reiterated this point and emphasized in addition that it "may have been a case of express malice" in that the deceased arsonist may have been a "weak-minded tool" of Bolish who did Bolish's bidding in perpetrating a serious crime by highly dangerous means (i.e., with a highly flammable liquid and an electric hotplate). Accordingly, it appears that a controlling consideration in Bolish was the actual presence of, and participation in the dangerous exercise by, the accused surviving co-conspirator.[6] Similarly, in State v. Morran,[7] the only other like case cited by the state, active participation by the accused was also important to the result reached therein.[8]
On the other hand, the courts of still other states have held felony-murder statutes inapplicable in situations more precisely like that before us wherein there was no question of the presence of the accused and the deceased died by his own hand.[9] These cases hold that the death of a co-conspirator entirely by his own act is simply not a criminal homicide. Such deceased conspirator was held not guilty of homicide (i.e., killing another) and therefore his act, attributable to the surviving co-conspirator, cannot make the latter guilty of homicide. We agree with this latter conclusion,[10] but would suggest even a more cogent reason therefore; one which, as the test, would be equally applicable in other felony-murder cases regardless of who did the actual killing, whether a perpetrator, the intended victim or a police officer.
The test we suggest is predicated upon the obvious ultimate purpose of the felony-murder statute itself which is, we think, to prevent the death of innocent persons likely to occur during the commission of certain inherently dangerous and particularly grievous felonies. The method employed by the statute to accomplish this purpose is, of course, to create a deterrent *551 to the commission of such felonies by substituting the mere intent to commit those felonies for the premeditated design to effect death which would otherwise be required in first degree murder if someone were killed in the commission thereof.[11] But we emphasize that the statute is primarily designed to protect the innocent public; and it would be incongruous to reach a conclusion having the effect of placing the perpetrators themselves beneath its mantle. Holding that the facts herein constitute first degree murder would give the statute just such an effect and would render the accused answerable equally as though he were responsible for the death of an absolutely innocent person. We think such result anathema to the statutory purpose. So really, in these cases, the inquiry should be simply whether an innocent person was killed.
We suggest, further, that applying this test would also avoid the semantic bind in which some courts, notably the Pennsylvania court, unhappily found themselves, viz., trying to determine first whether the killing at the hands of one other than a perpetrator was in fact "unlawful" so that vicarious responsibility could be laid to the perpetrators. Under this approach some killings of innocent people, even though flowing directly from the perpetration of one of the specified felonies, had to be termed "accidental", "excusable" or "justifiable"; and thereafter, of course, nothing short of a non sequitur could impute an "unlawful" homicide to the accused perpetrator.[12] We think such results unfortunate and unnecessary; and a simple application of the clear statutory purpose, as suggested, would obviate those results.
We hold, therefore, that the felony-murder statute is applicable only when an innocent person is killed as a sequential result of events or circumstances set in motion by one or more persons acting in furtherance of an intent or attempt to commit one of the felonies specified in such statute. As noted, the facts herein are patently outside the scope of this rationale and, accordingly, the felony-murder statute is inapplicable.
This does not mean to say however, that co-conspirators acting in furtherance of their conspiracy, even to commit the high crimes contemplated by the felony-murder statute, can kill or murder each other with impunity. It is one thing to say that such conspirators forfeit their right to live vis a vis innocent persons while in perpetration of their evil aims, but it is quite another to say that they are not protected otherwise from unlawful killing. Certainly, one conspirator may be guilty of the murder of a co-conspirator if the facts support premeditated murder or a lesser degree of unlawful homicide. But this is quite apart from the felony-murder concept with which we are here concerned.
We think the lower court was correct, and the order dismissing the indictment with prejudice is affirmed.
HOBSON, J., concurs.
PIERCE, C.J., dissents with opinion.
PIERCE, Chief Judge (dissenting).
What follows hereafter was originally written as this Court's opinion in disposition of this case, but because I was "left alone in the wilderness" by my brothers McNulty and Hobson, it now becomes an innocuous dissent  a perfect example, by the way, of "harmless error".
The State of Florida appeals to this Court from an order of the Collier County Circuit Court dismissing with prejudice *552 Count I of an indictment charging appellee Richard Eugene Williams with the felony-murder of one Steven Robert Hanssen.
On January 2nd, 1969, indictment was returned into the Collier County Circuit Court charging Williams and another in Count I with the felony-murder of Hanssen, in that Williams "did unlawfully effect the death" of Hanssen while the latter was "perpetrating or attempting to perpetrate an arson, to-wit: the unlawful burning of certain buildings at the Fakahatchee Conservation Club" on October 22nd, 1968. The prosecution was not pursued as to Williams' co-defendant nor as to Counts II and III, leaving involved in the lower Court and also in this Court only Count I charging Williams with the felony-murder of Hanssen as aforesaid. Count I will hereinafter be referred to as "the indictment".
On March 10, 1970, Williams filed motion to dismiss the indictment under Rule 1.190(b) and (c) FRCrP, 33 F.S.A.[1] on the ground that there were no material facts in conflict in the case and that "the undisputed facts do not establish a prima facie case of guilt against the defendant". The "undisputed facts" were not controverted by the State and were held by the trial Court to "stand admitted by the State's failure to file a traverse", as was required under Rule 1.190(d), FRCrP.
The facts set forth in the motion were substantially as follows: that "Williams procured Hanssen to burn certain buildings at the Fakahatchee Conservation Club, a hunting camp in Collier County"; that Hanssen "enlisted" one Foerst to assist him "in burning the buildings at the hunting camp"; that Hanssen and Foerst "drove from Gainesville to the entrance of * * * Fakahatchee", where "Hanssen went into the campsite alone while Foerst drove to Everglades City and back in Hanssen's car and that when he returned to pick up Hanssen at the entrance of the campsite, he saw smoke coming from the area of the camp and Hanssen was `burned'"; that two days later, "on October 24, 1968, * * * Hanssen died of the burns he received"; and that Williams was not present on the club premises the day of the fire.
In his order granting the motion to dismiss the indictment the trial Judge found that Hanssen "met death at his own hands from injuries suffered when he accidentally set fire to himself while attempting to burn certain buildings" at the hunting camp, at which time Hanssen "was at the camp alone".
Discussing the law applicable to the foregoing facts the trial Judge held that "the purpose of the felony-murder statute (782.04 Florida Statutes [F.S.A.]) is to supplant the required showing of premeditated design or malice as an element of first degree murder with a showing that the unlawful killing of a human being was effected by the defendant or his accomplice incidental to and in furtherance of a felony being committed by defendant or his accomplice." *553 The Judge further held that the death of Hanssen "at his own hands by accident was not in furtherance of the felony * * * and may not serve as the basis of an indictment under the felony-murder statute." The Court thereupon dismissed the indictment, from which order the State has appealed to this Court. The State takes issue here with the trial Judge's application of the law to the facts, and to his holding that the charge of murder was not made out. I would agree with the State and reverse the order dismissing the indictment.
That portion of our first degree murder statute (commonly referred to as the felony-murder statute) provides inter alia that "the unlawful killing of a human being * * * when committed in the perpetration of or in the attempt to perpetrate any arson * * * shall be murder in the first degree." F.S. sec. 782.04, F.S.A.
The substantive question presented in this case may be posed as follows: Where A hires B to burn a certain building in A's absence, and B while engaged in such arson accidentally burns himself to death, can A be held criminally responsible for B's death under the felony-murder statute aforesaid?
In answering such question in the affirmative, we may agree, as both parties here seem to do, that there is no reported case in Florida directly in point; but by the same token I hasten to point out that the overwhelming weight of authority, both by analogy and by sound reasoning, points unerringly to the conclusion that prosecution will lie. No two cases are factually identical, but the great body of our criminal jurisprudence has been built up by the application of established precedents grounded upon fundamental principles.
So it is that the Florida Supreme Court has held that where an officer is killed in an exchange of shots between police officers and armed robbers in perpetration of the robbery, or in fleeing from the scene, the robbers are guilty under the felony-murder statute of first degree murder, whether the fatal shot is fired by the robber or a police officer, and even without any premeditated design to commit an unlawful homicide. Hornbeck v. State, Fla. 1955, 77 So.2d 876.
In Griffith v. State, Fla.App. 1965, 171 So.2d 597, it was held by the 3rd District Court to be murder when a bystander is killed by a shot fired by the victim of the robbery at the defendant-robber.
Also in Jefferson v. State, Fla. 1961, 128 So.2d 132, where the accidental discharge of the defendant-robber's gun during the course of a robbery, resulting in the victim's death, was held by the Supreme Court to constitute first degree murder.
And in Campbell v. State, Fla. 1969, 227 So.2d 873, where the bank robber was pursued for about an hour by a succession of law officers over highways in South Georgia and North Florida, being finally stopped by a ditch and a roadblock, whereupon the robber-defendant with a handcuff on one wrist, snatched a gun from an officer's holster with the other hand and fired three shots killing the officer, the Supreme Court held that the officer's death was "the inevitable result of and an integral part of the same transaction, i.e. the robbery", citing Jefferson, supra.
Numerous cases from other jurisdictions are even closer in point. In Commonwealth v. Bolish, 381 Pa. 500, 113 A.2d 464, the Pennsylvania Supreme Court in 1955 held that the felony-murder doctrine applies in the death of an accomplice which results from the accomplice's own act in the perpetration of the felony, namely arson, observing that 
"Courts have a duty, especially in these days when crime has become so prevalent, to see that the lives, the property and the rights of law-abiding people are protected and consequently must delicately balance the scales of justice so that the rights of the public are protected equally with those of persons accused of crime. An arsonist is bound to know the perils and natural results of a fire which are reasonably foreseeable according *554 to the common experience of mankind, and in particular to know that an occupant of the building set on fire, an accomplice, a fireman and the public who are likely to come to watch the fire, may die in or as a natural proximate result of the fire. The attempt of an officer or person to put out the fire, or to rescue people or property therein, or the attempt of any person to escape from the burning building does not constitute in legal contemplation a superseding cause which is sufficient to relieve the arsonist from murder in the first degree. In reason, logic and principle we can see no valid distinction between those cases and a case where an accomplice is killed while setting fire to a house (or building) or attempting to escape therefrom,  the latter's death is just as readily foreseeable as is the death of an owner who attempts to escape or to rescue lives or property from the building. In the interest and for the protection of society a knave who procures another to perpetrate an unlawful act which is dangerous to human life must be held legally responsible for any death which is a natural result of such act."
In Bolish, supra, the conviction was reversed on other grounds, but on retrial the defendant was again convicted of first degree murder, which conviction was upheld on appeal. Commonwealth v. Bolish, (1958) 391 Pa. 550, 138 A.2d 447.
There is a myriad of cases to support my views as herein expressed, but it would be a work of supererogation to review or discuss even a representative sampling of such cases. Suffice to say they seem most uniformly in line with my thinking.
In 40 C.J.S. Homicide § 21a, p. 868, it is said:
"An unintended homicide, committed by one who at the time is engaged in the commission of some other felony, is murder both at common law and under the statutes declaratory thereof. * * * A homicide committed or caused by one engaged in committing a felony is murder, irrespective of whether the person killed was the one on whom, or on whose property, the attempt had been made, or was another who interfered to prevent its success. * * * The general rule under discussion applies, for example, to an unintended homicide committed by one who was at the time engaged in committing an unlawful abortion. * * * It also applies to one who has unintentionally committed a homicide in committing arson, burglary, rape, or robbery * * *".
In 40 Am.Jur.2d § 34, p. 325, et seq. the text writer sets forth the principle involved as follows:
"It is a familiar rule that when several parties conspire or combine together to commit any unlawful act, each is criminally responsible for the acts of his associates or confederates committed in furtherance or in prosecution of the common design for which they combine; and if a culpable homicide results from the pursuance of the common purpose of the conspiracy, all are alike criminally responsible, including conspirators who were not personally present at the time of the commission of the homicide act, or did not actually participate therein. Where one of the conspirators commits a homicide in the furtherance of the original design, it is, in the eyes of the law, the act of all, even though such killing was not a part of the prearranged plan. The actual perpetrator is considered to be the agent of his associates. His act is their act, and all are equally criminal."
These statements of the law taken from C.J.S. and Am.Jur. are supported by copious citations of authorities from courts all over the country.
These authorities support the basic proposition that under the felony-murder statute a person may be prosecuted for first degree murder when an accomplice is killed in furtherance of perpetrating or attempting to perpetrate a felony, such as arson, even though the person charged was not at the actual scene of the homicide. *555 Indeed, the able Circuit Judge, in dismissing the indictment, agreed with the foregoing except he was of the opinion that the death of the accomplice Hanssen was "not in furtherance of the felony" of arson. I cannot personally go along with this narrow interpretation of Hanssen's acts.
Hanssen had agreed with Williams "to burn certain buildings at the * * * hunting camp". One Foerst had been "enlisted" by Hanssen to assist Hanssen "in burning the building at the hunting camp". Foerst and Hanssen drove from Gainesville to the hunting camp premises "and Hanssen went into the campsite alone while Foerst drove to Everglades City and back in Hanssen's car, and * * * when he returned to pick up Hanssen at the entrance of the campsite, he saw smoke coming from the area of the camp and Hanssen was `burned'", from which he died two days later. He stated in the hospital before he died that "what happened `was an accident'" and that "his being burned `was strictly his own doing'".
These latter statements of Hanssen were not significant, because it is not reasonable to assume that he deliberately burned himself to death. What is significant is that he voluntarily of his own volition proceeded to the campsite premises, went in alone to one of the buildings, and did whatever was necessary to burn the building, which in the process cost him his own life. It was all done by Hanssen in pursuance of a conspiracy or agreement by which Williams hired Hanssen to perpetrate the very felony, arson, which caused his death.
In my opinion, these facts bring the case squarely within the provisions and intendments of our felony-murder statute. The language "in furtherance of" the arson is synonymous with "being engaged in" or "in the course of", to paraphrase the language used in the varying cases referring to the statute involved.
One last word on the procedural posture of the case. As I have mentioned, the issue now before the Court was the outgrowth of a motion to dismiss purporting to set forth the "undisputed facts" concerning the merits of the murder charge. The State did not elect to controvert the same and such facts were thereupon admitted for purpose of disposition of the motion. I deem it not amiss, however, to observe that Courts do not look with favor upon making final determination of serious felony charges, especially capital cases, by the mechanics of pleading. This is not to say that such motions to dismiss have no place in our criminal jurisprudence but the instances where such dispositive procedure should be utilized would be extremely rare.
In view of this Court's majority disposition of the case, it becomes unnecessary to do more here than to call attention to my views with regard thereto, especially involving unlawful homicide. It is in my opinion that such cases be tried on the merits by a jury.
From what I have hereinbefore observed, the order dismissing the indictment should, in my opinion, be 
Reversed.
NOTES
[1] But see, State ex rel. Glenn v. Klein (Fla.App. 1966), 184 So.2d 904, wherein the accused had earlier been convicted under a charge of first degree murder for the death of his cofelon, shot by the intended victim of a robbery. The cited case, however, came up on a subsequent charge of robbery and the sole question involved was one of double jeopardy.
[2] See, Hornbeck v. State (Fla. 1955), 77 So.2d 876 (officer shot by either robber or fellow officer); and Griffith v. State (Fla.App. 1965), 171 So.2d 597 (bystander shot by robbery victim). But see, State v. Andreu (Fla.App. 1969), 222 So.2d 449.
[3] (1955), 381 Pa. 500, 113 A.2d 464.
[4] (1958), 391 Pa. 550, 138 A.2d 447.
[5] Commonwealth ex rel. Smith v. Myers (1970), 438 Pa. 218, 261 A.2d 550, 556.
[6] We think it not inappropriate at this juncture, to point out that Pennsylvania has presently gone too far, in our view, in this direction; and it now appears that the felony-murder statute is applicable in that state only if a perpetrator is the actual killer. Since the case relied upon in Bolish (i.e., Commonwealth v. Almeida (1949), 362 Pa. 596, 68 A.2d 595) was expressly overruled, and Bolish merely distinguished, Bolish must now be considered within this latter category. (See, Commonwealth v. Myers, id.).
[7] (1957), 131 Mont. 17, 306 P.2d 679.
[8] This is evident from the opinion stating that the facts in People v. Ferlin (1928), 203 Cal. 587, 265 P. 230, are clearly distinguishable. Although the opinion does not say why the facts are distinguishable, it cites another California case (People v. Cabaltero (1939), 31 Cal. App.2d 52, 87 P.2d 364) which distinguishes Ferlin on the basis that in the latter case the co-conspirator killed himself while he alone was perpetrating the felony.
[9] See, People v. Ferlin (1928), 203 Cal. 587, 265 P. 230; People v. Jennings (1966), 243 Cal. App.2d 324, 52 Cal. Rptr. 329; Woodruff v. Superior Court of County of Los Angeles (1965), 237 Cal. App.2d 749, 47 Cal. Rptr. 291; and People v. La Barbera (1936), 159 Misc. 177, 287 N.Y.S. 257.
[10] We do not, however, agree with additional reasoning used in those cases to support the result reached, some of which appears unduly to limit the scope of the felony-murder concept.
[11] See, Pope v. State (1922), 84 Fla. 428, 94 So. 865.
[12] See, e.g., Commonwealth v. Redline (1958), 391 Pa. 486, 137 A.2d 472. Indeed, it is likely that this approach is responsible for the apparent present Pennsylvania rule to which we cannot subscribe. See, n. 6, supra.
[1] Rule 1.190(b) and (c) FRCrP provides:

(b) Motion to Dismiss.
(1) Grounds. All defenses available to a defendant by plea, other than not guilty, shall be made only by motion to dismiss the indictment, information or affidavit, whether the same shall relate to matters of form, substance, former acquittal, former jeopardy, or any other defense.
(c) Time for Moving to Dismiss. Unless the court grants him further time, the defendant shall move to dismiss the indictment, information or affidavit either before or upon arraignment. The court in its discretion may permit the defendant to plead and thereafter to file a motion to dismiss at a time to be set by the court. except for objections based upon fundamental grounds, every ground for a motion to dismiss which is not presented by a motion to dismiss within the time hereinabove provided for shall be taken to have been waived. However, the court may at any time entertain a motion to dimiss on any of the following grounds:
* * * * *
(4) There are no material disputed facts and the undisputed facts do not established a prima facie case of guilt against the defendant. The facts on which such motion is based should be specifically alledged and the motion sworn to.