**STATE of Missouri, Respondent,**

v.

**Alonzo LIGHT, Appellant.**

**No. 10715.**

Missouri Court of Appeals,
Southern District,
Division One.

Jan. 29, 1979.

Jay V. White, Rolla, for appellant.

John D. Ashcroft, Atty. Gen., Stanley Robinson, Asst. Atty. Gen., Jefferson City, for respondent.

FLANIGAN, Presiding Judge.

A jury found the defendant guilty of manslaughter (§ 559.070)[1] and a sentence of three years' imprisonment was imposed. On this appeal defendant makes the sound contention that the evidence is insufficient to support the conviction and that the trial court erred in failing to sustain his motion for judgment of acquittal.

The events giving rise to the prosecution occurred on July 5, 1976, on which date Robert Bradshaw, age 18, was electrocuted. At the time of his death Bradshaw and defendant were jointly engaged in an unsuccessful attempt to steal some wire. In pursuance of their common design Bradshaw climbed a telephone pole, near an abandoned house in a remote rural area, for the purpose of stealing some wire attached to its top. In so doing, and before any larceny had been completed, Bradshaw came into contact with a high voltage line, received the fatal shock, and fell to the ground.

The state's evidence showed that defendant was the originator of the larcenous plan. Defendant was present at the scene when Bradshaw climbed the pole and met his death. There was no claim nor proof by the state that either Bradshaw or defendant knew that any of the wires attached to the pole was energized.

Section 559.070, which contains the "only definition" of manslaughter in this state, *State v. Williams*, 442 S.W.2d 61, 64 (Mo. banc 1968), reads: "Every killing of a human being by the act, procurement or culpable negligence of another, not herein declared to be murder or excusable or justifia-

1. Unless otherwise indicated, all references to statutes are to RSMo 1969, V.A.M.S.

ble homicide, shall be deemed manslaughter."[2]

The state's verdict-directing instruction required the jury to find the defendant guilty of manslaughter if they found beyond a reasonable doubt "that on or about the 5th day of July, 1976, in the County of Howell, State of Missouri, the defendant caused the death of Robert W. Bradshaw by procuring the said Robert W. Bradshaw to do an illegal act, to-wit: stealing some copper wire and that while the said Robert W. Bradshaw was engaged in attempting to perpetrate said illegal act, he received a severe electrical shock therefrom and died as a direct and proximate result thereof." The instruction was essentially consistent with the factual allegations of the information.

At the time of the instant offense stealing property of the type here involved having a value less than $50 was punishable by a fine or confinement in the county jail for not more than one year. Stealing property having a value of at least $50 would support a punishment of imprisonment.[3] The information did not state and the evidence did not show the value of the wire which was the target of the intended larceny.[4]

The conduct of the defendant, as charged in the information, is labeled by the state, in its brief, as "unlawful-act manslaughter" and "involuntary manslaughter." The state refers to State v. Foster, 338 S.W.2d 892, 896 (Mo.1960) where it is said, "Involuntary manslaughter is the unintentional killing of another while doing some unlawful act not amounting to a felony." It is apparent that the state concedes that Bradshaw and defendant were co-misdemeanants rather than co-felons.

Neither side has cited any authority holding that a defendant may be guilty of manslaughter for the accidental death of his accomplice taking place during the perpetration of a misdemeanor. It has been said

that "the unlawful-act type of manslaughter is often referred to, somewhat loosely, as the 'misdemeanor-manslaughter doctrine,' a sort of junior-grade counterpart of the 'felony-murder doctrine.'" Criminal Law, LaFave-Scott, § 79, p. 594 (1972).

At common law a person committing a homicide in the perpetration of a felony was guilty of murder. In Missouri, if a homicide occurs in connection with certain felonies enumerated in § 559.010, it is murder in the first degree, whether or not the death was intended. The commission of, or the attempt to commit, the felony is the legal equivalent of premeditation, deliberation, and malice. If the intention is to commit some felony other than one of those enumerated in § 559.010, such homicide, although unintentional, is murder in the second degree (assuming, of course, that the evidence is otherwise insufficient to show the elements necessary to a finding of murder in the first degree). State v. Jasper, 486 S.W.2d 268, 270 (Mo. banc 1972). An incidental and unintentional homicide, committed during the perpetration of a misdemeanor, is manslaughter. State v. Robinett, 279 S.W. 696, 700[12] (Mo.1926); State v. Lindsey, 333 Mo. 139, 62 S.W.2d 420, 425 (1933); State v. Foster, 338 S.W.2d 892, 896 (Mo.1960).

Missouri has recognized and invoked the felony-murder rule in instances where the person killed is one other than an accomplice of the defendant. See, for example, State v. Chambers, 524 S.W.2d 826 (Mo. banc 1975), where fleeing car thieves collided with another vehicle and four occupants of the latter died as a result. Missouri has also recognized that a defendant would be guilty of manslaughter where he engaged in a drag race and the vehicle of his co-participant struck and killed an innocent third person. State v. Fennewald, 339 S.W.2d 769 (Mo.1960).

2. Section 559.070 is now § 565.005 V.A.M.S.

3. See § 560.161. Under § 560.156 "property" which may be the subject of larceny includes "everything of value whether real or personal, tangible or intangible . . . ."

4. See State v. Holliday, 546 S.W.2d 38 (Mo. App.1976) dealing with an attempt to steal property of unstated value.

Most jurisdictions have refused to invoke the felony-murder doctrine against the defendant where the death involved was that of his *accomplice* and it resulted from forces over which the defendant had no direct control. Thus the doctrine was held to be inapplicable where a co-felon of the defendant was killed by police, *Commonwealth v. Redline*, 391 Pa. 486, 137 A.2d 472 (1958); *People v. Antick*, 15 Cal.3d 79, 123 Cal.Rptr. 475, 539 P.2d 43 (banc 1975); *Wright v. State*, 344 So.2d 1334 (Fla.App.1977); or by the intended victim, *State v. Canola*, 73 N.J. 206, 374 A.2d 20 (1977); *Sheriff, Clark County v. Hicks*, 89 Nev. 78, 506 P.2d 766 (1973); *People v. Austin*, 370 Mich. 12, 120 N.W.2d 766 (1963); *People v. Washington*, 62 Cal.2d 777, 44 Cal.Rptr. 442, 402 P.2d 130 (1965); *People v. Morris*, 1 Ill.App.3d 566, 274 N.E.2d 898 (1971).

*Redline* a leading authority in the field, holds, 137 A.2d at 476, that "the mere coincidence" of homicide and felony is not enough to satisfy the requirements of the felony-murder doctrine, and that it is necessary to show that the conduct causing death was done in furtherance of the design to commit the felony. The court pointed out that the shooting of the accomplice by the policeman was justifiable and that the defendant, "no matter how much of an outlaw he may be," could not be charged, with respect to the death, for the consequences of the lawful act of another person.

In *Antick* the court said, 123 Cal.Rptr. at 480, 539 P.2d at 48, "It is not enough that the killing was a risk reasonably to be foreseen and that the robbery might therefore be regarded as a proximate cause of the killing." The court also said, 123 Cal.Rptr. at p. 481, 539 P.2d at p. 49: "[N]either the felony-murder doctrine nor the theory of vicarious liability may be used to hold a defendant guilty of murder solely because of the acts of an accomplice, if the accomplice himself could not have been found guilty of the same offense for such conduct." In support of that proposition the court cited *People v. Ferlin*, 203 Cal. 587, 265 P. 230 (1928) where the defendant was charged with felony-murder based upon the accidental death of one Skala, whom de-

fendant had hired to commit arson. Skala accidentally killed himself while perpetrating the arson. In holding that the felony-murder doctrine would not be invoked, the court, in *Ferlin*, said: "It would not be seriously contended that one accidentally killing himself while engaged in the commission of a felony was guilty of murder. If the defendant herein is guilty of murder because of the accidental killing of his co-conspirator, then it must follow that Skala was also guilty of murder, and, if he had recovered from his burns, that he would have been guilty of an attempt to commit murder. . . . *It cannot be said from the record in the instant case that defendant and deceased had a common design that deceased should accidentally kill himself. Such an event was not in furtherance of the conspiracy, but entirely opposed to it.*" (Emphasis added.)

In *Canola*, 374 A.2d at 30 the court said it would be "regressive" to extend the felony-murder rule "to lethal acts of third persons *not in furtherance* of the felonious scheme." (Emphasis added.)

In arson cases, the majority of jurisdictions have refused to invoke the felony-murder doctrine where the death was that of defendant's accomplice (himself the arsonist) and the defendant was not present at the scene of the arson. *People v. La-Barbera*, 159 Misc. 177, 287 N.Y.S. 257 (1936); *Woodruff v. Superior Court of County of Los Angeles*, 237 Cal.App.2d 749, 47 Cal.Rptr. 291 (1965); *People v. Earnest*, 46 Cal.App.3d 792, 120 Cal.Rptr. 485 (1975); *People v. Ferlin*, 203 Cal. 587, 265 P. 230 (1928); *State v. Williams*, 254 So.2d 548 (Fla.App.1971). Contrary results have been reached where the defendant was present at the scene of the fire which resulted in the death of his accomplice. *Commonwealth v. Bolish*, 391 Pa. 550, 138 A.2d 447 (1958). *State v. Sotteriou*, 132 N.J.Super. 403, 334 A.2d 47 (1975).

In *LaBarbera* the court said that the death of the accomplice occurred by his own act, and therefore was not by the act of another and did not come within the defini-

tion of criminal homicide. In *Woodruff* the court said that the accomplice's act of accidentally killing himself was not an unlawful killing. In *Williams* the court held that the felony-murder statute was applicable "only when an innocent person is killed as a sequential result of events or circumstances set in motion by one or more persons acting in furtherance of an intent or attempt to commit one of the felonies specified in such statute."

It should be noted that in the cases heretofore discussed, where the felony-murder doctrine was held to be inapplicable, the defendant was excused from any culpability for the death of his accomplice; that is to say, not only was the defendant not guilty of murder, he was not guilty of manslaughter.

*Bolish* and *Sotteriou* did invoke the doctrine of felony-murder against an arsonist based on the accidental death of his co-arsonist. In those cases, unlike the arson cases previously cited, the defendant was present at the scene of the fire.

It is doubtful, however, that defendant's criminal responsibility for the death of his accomplice should depend upon whether or not defendant was present. Any causal connection with the death, and any culpability therefor, would seem to be the same whether defendant was or was not a witness to the unintended demise of his co-perpetrator.[5] If, under the facts in *La-Barbera*, *Woodruff*, *Earnest*, *Ferlin*, and *Williams*, the defendant had sent *two* arsonists to the scene, could it be plausibly maintained that the defendant was blameless for the death but that the companion of the decedent was culpable? It seems unlikely. Note also that in the foregoing cases, where the underlying felony was one other than arson, the defendant *was*

present at the time of the death of his accomplice.

In drag racing cases several jurisdictions have refused to invoke the "misdemeanor-manslaughter doctrine" where the death was that of a *participant* in the drag race. *Thacker v. State*, 103 Ga.App. 36, 117 S.E.2d 913 (1961); *Commonwealth v. Root*, 403 Pa. 571, 170 A.2d 310 (1961); *State v. Petersen*, 270 Or. 166, 526 P.2d 1008 (1974).

In *Thacker* the court emphasized that the state had failed to prove that the death of the accomplice was not due to the act of the deceased himself. In *Root* the court said at p. 314 of 170 A.2d that the defendant's "reckless conduct was not a sufficiently direct cause of the competing driver's death to make him criminally liable therefor." In *Petersen* the Supreme Court of Oregon adopted, as its opinion, a dissenting opinion of Chief Judge Schwab who, in the court of appeals, voted to reverse the manslaughter conviction. The adopted opinion (appearing in 17 Or.App. 478, 522 P.2d 912 at 921–22) said, "[T]he issue is not causation, it is responsibility. In my opinion, policy considerations are against imposing responsibility for the death of a *participant* in a race on the surviving racer when his sole contribution to the death is the participation in the activity mutually agreed upon. . . . Of course, all participants could be prosecuted if their reckless conduct constitutes some other offense. And all participants could be prosecuted if their reckless conduct results in the death or injury of a nonparticipant. Drawing the line at that point, however, seems to be a sufficient deterrent to me." (Emphasis in original.)

The court, in *Petersen*, disapproved of the holding in *Commonwealth v. Atencio*, 345 Mass. 627, 189 N.E.2d 223 (1963).[6] In *Atencio* three persons were playing "Russian

---

5. In the instant case, although defendant was present at the time of the death of Bradshaw, the fact of his presence was not charged in the information nor was it included in the state's verdict-director as essential to a finding of guilt.

6. The same court which decided *Atencio* later said, in a case where the felony-murder doc-

trine was attempted to be invoked with respect to the death of an *innocent* victim, "The basic question is whether a felon can be held criminally liable for the death of any person killed by someone resisting the commission of the felony. We hold that he cannot be." *Commonwealth v. Balliro*, 349 Mass. 505, 209 N.E.2d 308, 314 (1965).

roulette" and one of them shot and killed himself. A survivor's conviction for manslaughter, i. e., recklessly causing the death of another, was affirmed. The *Petersen* court said that it would not impose liability for manslaughter under the facts in *Atencio* because the participants "had knowingly and voluntarily joined in a reckless course of conduct."[7]

Two brothers of Bradshaw participated in the unlawful venture and were present when he met his death. If defendant is guilty of homicide, would it not follow that the brothers were guilty of fratricide? Ordinarily a defendant may not complain of the fact that other people have not been prosecuted for the same offense. It seems clear, however, that if the brothers had been charged with manslaughter, a jury would be reluctant, if not unwilling, to convict them.

If a would-be burglar on the roof of a house fell to his death because he slipped on a loose shingle, would his accomplice, keeping a lookout below, be criminally answerable for his death? If not, would the result be otherwise merely because the lookout, rather than the decedent, originated the idea to commit the burglary? The paucity of authorities in this area may be explained by the fact, if it be a fact, that homicide charges simply are not filed in such circumstances.

Cases heretofore cited have held that a felon is not criminally answerable for the death of his co-felon where it is caused by the direct act of the resisting victim or law enforcement officers. Such counteractions can hardly be said to have been unanticipated but they are calculated to thwart, rather than to further, the criminal purpose. The courts which have reached these results have usually not done so on tort concepts of contributory negligence or assumption of risk on the part of the decedent. Some of them expressly rejected the applicability of the tort theory of proximate cause.

Analysis of the authorities seems to justify the conclusion that a *combination* of two factors will lead to the result that the court will not invoke the felony-murder doctrine. These factors are:

1. The decedent was a willing participant in the underlying felony; and

2. The death was caused by an outside agency, human or natural, which had the effect, calculated or accidental, of thwarting rather than furthering the commission of the underlying felony.

In the instant case both factors are present. The thwarting force, the electrical charge, was no more within the control of the defendant and no more predictable than resistance by a victim or intervention of the police. If a felon is not responsible for the death of his co-felon under the latter circumstances, a misdemeanant is not responsible for the death of his co-misdemeanant under the facts at bar.[8]

The judgment should be reversed and the defendant discharged. It is so ordered.

TITUS, J., and KENNEDY, PYLE and CAMPBELL, Special Judges, concur.

---

7. In the instant case the state did not charge or prove a violation by the defendant of that portion of § 559.070 dealing with "culpable negligence." For a discussion of that prong of the manslaughter statute see *State v. Aitkens*, 352 Mo. 746, 179 S.W.2d 84 (1944).

8. "It has already been noted that, for manslaughter liability of the criminal-negligence sort, perhaps one is not liable for an unintended death which happens to a willing participant in the decedent's criminally negligent conduct. If this limitation upon liability is valid as to the criminal negligence sort of manslaughter, it is, on principle, equally so as to the unlawful-act-causing-foreseeable-death type of manslaughter; if it is unjust to punish a person for the death of his willingly participating colleague in the one situation, it is equally unjust to do so in the other." Criminal Law, LaFave-Scott, § 79, p. 598 (1972).