STATE of Missouri, Respondent,

v.

John J. CAMILLO, Appellant.

No. WD 31383.

Missouri Court of Appeals,
Western District.

Dec. 2, 1980.

Motion for Rehearing and/or Transfer to Supreme Court Denied Dec. 30, 1980.

Application to Transfer Denied
Feb. 9, 1981.

Howard L. McFadden, Public Defender, Jefferson City, for appellant.

John Ashcroft, Atty. Gen., Philip M. Koppe, Asst. Atty. Gen., Kansas City, for respondent.

Before CLARK, P. J., and DIXON and SOMERVILLE, JJ.

SOMERVILLE, Judge.

Defendant was charged as a second offender with the felony of escape, Section 557.351, RSMo 1969, tried by a jury and found guilty, and sentenced by the court to five years confinement in the Missouri Department of Corrections. The five year sentence was ordered to run consecutively with a life sentence being served by defendant for murder, first degree.

Defendant does not question the sufficiency of the evidence to support his conviction. For this reason, an extended synopsis of the trial evidence is unnecessary. Briefly, the state introduced evidence from which the jury could, and obviously did, find beyond a reasonable doubt that on October 2, 1978, defendant, while sentenced to the custody of and lawfully confined by the Missouri Department of Corrections, escaped from the Church Farm, Auxiliary Prison.

On appeal, defendant seeks reversal and remand for a new trial on two grounds which, stated verbatim, are as follows: (1) "The trial court erred in overruling appellant's motion to disclose past jury records of the county in which the case was tried because appellant needed them to show that there has been a pattern of exclusion of blacks, young people, poor people, transients and others which might be regarded as his peers"; and (2) "The trial court erred in failing to order production of prison records to prove that not all escapes are referred for prosecution in that appellant is the victim of selective prosecution."

Defendant's first point, by its very tenor, is integrally related to a motion filed by defendant to quash the jury panel. On May 24, 1979, some three months prior to trial, defendant, although represented by counsel, filed a pro se "Motion to Quash Jury Panel" on the grounds that the "panel and jury system is the production [sic] of systematic exclusion of blacks, young persons and poor persons, such that any trial by the use of said jury would deny the defendant 6th and 14th Amendment rights under the United States Constitution to a fair and impartial jury." Defendant was afforded an evidentiary hearing on said motion on May 29, 1979. Prior to said hearing defendant filed a pro se "Motion for Discovery", which, by no stretch of the imagination, sought discovery or disclosure of any matter which would aid defendant in meeting the burden he carried with respect to his motion to quash the jury panel.

Evidence presented at the hearing held on the motion to quash the jury panel con-

sisted solely of defendant's own testimony. Fairly summarized, defendant testified that nothing short of a jury composed of inmates of the penitentiary would constitute a jury of his "peers". He rationalized that only inmates of the penitentiary could appreciate and understand "conditions" and "pressures" existing in prison life. Defendant characterized "young persons" as people between twenty-one and thirty years of age.[1] He did not undertake to explicate those whom he referred to as "poor persons". Defendant has left "poor persons" as a "distinctive" group so adrift that it no longer needs to be considered.

Defendant was pointedly asked by the trial court at the hearing on his motion to quash the jury panel whether he had any evidence that "blacks", "young persons", or "poor persons" were systematically excluded from "jury panels" in Cole County and defendant replied that he neither had nor knew of such evidence.

No evidence was offered or presented by defendant as to what percentage of the population of Cole County was comprised of either "black persons" or "young persons". Nor was any evidence offered or presented by defendant as to the manner in which persons comprising jury "lists" in Cole County were selected or the manner in which jury panels were drawn.

At the conclusion of the hearing, the trial court overruled defendant's motion to quash the jury panel. On August 22, 1979, defendant, pursuant to Rule 25.33 (now Rule 25.04), filed a motion captioned "Motion By Defendant To State To Disclose" which, insofar as pertinent at this juncture, sought an order from the trial court directing the state to produce "[r]ecords of the last 10 years reflecting the jury *venerie* as well as the jury records reflecting those jurors who have actually served on Circuit Court juries in the Circuit Court of Cole County." Counsel for defendant tendered the following argument at a hearing held in conjunction with said latter motion: "Your Honor, it is the defendant's opinion that— or at least he supposes that based upon past venires the Court would be unable to impanel a jury venire of his peers, based upon his background and his lifestyle, and feels that because of this he would be denied a quote 'jury of his peers' as the statute and constitution provides. . . . Your Honor, I believe his position would be that this would show that the individuals who might possibly be on a venire here would not have the same background he has had. And I would imagine in that light he would be saying that as a result of not being—not having the same background, therefore, not being his peers, they would not be impartial judges of the case." The trial court denied the "Motion By Defendant To State To Disclose."

It is significant to note that the latter motion was filed and argued after defendant's motion to quash the jury panel was overruled. There is no indication in the record that defendant sought leave of court to refile his previous motion to quash the jury panel or that he contemplated filing a new motion to do so. Of even greater significance is the fact that counsel for defendant, in the argument proffered in support of the "Motion By Defendant To State To Disclose", neither contended nor suggested that "records of the last 10 years reflecting jury *venerie* as well as the jury records reflecting those jurors who have

---

1. In view of the dispositional basis of defendant's first point, it is unnecessary to decide whether "young persons" possess characteristics which make them a "distinctive" group for purposes of jury representation. An impressive line of cases exist rejecting claims that young people constitute a "distinctive" group for purposes of jury representation. *Hamling v. United States*, 418 U.S. 87, 94 S.Ct. 2887, 41 L.Ed.2d 590 (1974); *United States v. Potter*, 552 F.2d 901 (9th Cir. 1977); *United States v. Test*, 550 F.2d 577 (10th Cir. 1976); *United States v. Kirk*, 534 F.2d 1262 (8th Cir. 1976), *cert. denied* 433 U.S. 907, 97 S.Ct. 2971, 53 L.Ed.2d 1091 (1977); *United States v. Diggs*, 522 F.2d 1310 (D.C.Cir.1975), *cert. denied* 429 U.S. 852, 97 S.Ct. 144, 50 L.Ed.2d 127 (1976); *United States v. Olson*, 473 F.2d 686 (8th Cir. 1973), *cert. denied* 412 U.S. 905, 93 S.Ct. 2291, 36 L.Ed.2d 970 (1973). See also *State v. McFarland*, 604 S.W.2d 613 (Mo.App.1980). Contra: *United States v. Butera*, 420 F.2d 564 (1st Cir. 1970); and *Commonwealth v. Bastarache*, —— Mass. —— 409 N.E.2d 796 (1980).

actually served on Circuit Court juries in the Circuit Court of Cole County" might or would contain information which would prove or tend to prove what percentage of the population of Cole County in 1979 or any other year consisted of either "black persons" or "young persons". Nor has defendant contended or suggested on appeal that the records sought and denied contained such information.

In *Taylor v. Louisiana*, 419 U.S. 522, 528, 95 S.Ct. 692, 697, 42 L.Ed.2d 690 (1975), the Supreme Court of the United States reaffirmed that "the selection of a petit jury from a representative cross section of the community is an essential component of the Sixth Amendment right to a jury trial." In order to preserve the inviolability of this component Sixth Amendment right, the Supreme Court concluded in *Taylor*, 419 U.S. at 538, 95 S.Ct. at 702, that "jury wheels, pools of names, panels, or venires from which juries are drawn must not systematically exclude distinctive groups in the community and thereby fail to be reasonably representative thereof." In *Duren v. Missouri*, 439 U.S. 357, 364, 99 S.Ct. 664, 668, 58 L.Ed.2d 579 (1979), the Supreme Court spelled out the "fair-cross-section" inquiry implicit in *Taylor*: "In order to establish a prima facie violation of the fair-cross-section requirement, the defendant must show (1) that the group alleged to be excluded is a 'distinctive' group in the community; (2) that the representation of this group in venires from which jurys are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusions of the group in the jury-selection process."

██ Contrary to what appears to be a popular notion in some quarters, attacks on the composition of jury panels on constitutional grounds do not prove themselves. To the contrary, those leveling such attacks must carry the burden set forth in *Duren v. Missouri, supra.* Jury panels in this state are uniquely county oriented in the sense that their demographic makeup varies from county to county. For this reason, only demographic data of the county where a defendant is tried is probative. Moreover, something more than conjectural demographic data is required.

In order to dispose of defendant's first point, it is unnecessary to decide whether defendant's request for disclosure was "reasonable" and the records sought were subject to disclosure under Rule 25.33 (now Rule 25.04) [2]. Even if one assumes, arguendo, that defendant's motion to quash the jury panel was pending before the trial court and· that the records sought by the "Motion By Defendant To State To Disclose" were subject to discovery, there is still no escape from the fact that defendant neither contends nor suggests that the records sought contained information which would prove what percentage of the population of Cole County in 1979, or any other year, consisted of either "black persons" or "young persons". In order to establish a prima facie violation of the fair-cross-section requirement inherent in the Sixth Amendment [applicable to jurys in state court proceedings by the Fourteenth Amendment], it was incumbent upon defendant to show, among other things, that "black persons" and "young persons" were "distinctive" groups in Cole County and that representation of those groups in venires in Cole County, from which petit jurors were selected, was not fair and reasonable in relation to the number of such persons in Cole County. As previously pointed out, defendant does not contend or suggest that this evidentiary void would have been filled or alleviated by any information contained in the records sought to be disclosed.

██ Failure on the part of the state to respond to or comply with requests or orders for discovery is measured in light of whether such failure results in fundamental unfairness or prejudice to a defendant. *State v. Smothers*, 605 S.W.2d 128, 131 (Mo. banc 1980); and *State v. Moten*, 542 S.W.2d 317, 320 (Mo.App.1976). Borrowing the

**2.** This court expressly refrains from deciding these issues. However, see generally *State ex rel. Garrett v. Saitz*, 594 S.W.2d 606 (Mo. banc 1980).

same logic, the trial court's denial of the "Motion By Defendant To State To Disclose" did not constitute reversible error because doing so did not prejudice defendant. This conclusion is inevitable in light of the fact that information contained in said records conjoined with the paucity of evidence introduced by defendant in support of his motion to quash the jury panel would not satisfy defendant's burden of establishing "a prima facie violation of the fair-cross-section requirement" as mandated by *Duren v. Missouri, supra.*

For dispositional purposes it is necessary to put defendant's second point, that the trial court erred in not ordering disclosure of certain prison records, in proper context. The "Motion By Defendant To State To Disclose", *supra,* also sought an order from the trial court directing the state to produce "[r]ecords of the Missouri Department of Corrections for the last twelve (12) years listing by name all inmates who had escaped during that period and the records which show which of those inmates were subsequently prosecuted for escape." Defendant alleged in his motion that records pertaining to escapes and prosecutions were "requested to aid Defendant in preparing his defense of . . . selective prosecution (selective enforcement of the law)." The thrust of defendant's testimony at the evidentiary hearing held in connection with his motion, fairly analyzed, was directed towards prison conditions and policies which purportedly influenced or motivated his escape. For this reason, it appears that defendant, regarding preparation of a defense, was thinking in terms of the defense of "necessity", *State v. Baker,* 598 S.W.2d 540 (Mo.App.1980), as opposed to establishing grounds for quashing the information or obtaining a court directed acquittal on the theory that he was being selectively prosecuted in violation of the "equal protection" clause of the Fourteenth Amendment of the Constitution of the United States. "Selective prosecution", generically referred to as a defense, has seldom been encountered by the appellate courts of this state. Two Missouri cases which touch the subject, *Mechanic v. Gruensfelder,* 461 S.W.2d 298, 316 (Mo.App.1970), involving criminal contempt and *State v. Light,* 577 S.W.2d 134 (Mo.App.1979), involving manslaughter, tersely do so and reject contentions that "selective prosecution" occurred. There is, however, a considerable body of federal case law on the subject which confronts it in the context of concepts of equal protection inherent in the due process clause of the Fifth Amendment.[3]

■ In *Oyler v. Boles,* 368 U.S. 448, 456, 82 S.Ct. 501, 506, 7 L.Ed.2d 446 (1962), where certiorari was granted in a habeas corpus proceedings commenced in the Supreme Court of Appeals of West Virginia seeking relief from conviction under the state's recidivist statutes, the Supreme Court of the United States held: "Moreover, the conscious exercise of some selectivity in enforcement is not in itself a federal constitutional violation. Even though the statistics in this case might imply a policy of selective enforcement, it was not stated that the selection was deliberately based upon an unjustifiable standard such as race, religion, or other arbitrary classification. Therefore grounds supporting a finding of a denial of equal protection were not alleged." As stated in *United States v. Berrios,* 501 F.2d 1207, 1211 (2d Cir. 1974), cited and quoted with approval in *United States v. Swanson,* 509 F.2d 1205, 1208 (8th Cir. 1975), "[t]o support a defense of selective or discriminatory prosecution, a defendant bears the heavy burden of establishing, at least *prima facie,* (1) that, while others similarly situated have not generally been proceeded against because of conduct of the type forming the basis of the charge against him, he has been singled out for prosecution, and (2) that the government's discriminatory selection of him for prosecution has been invidious or in bad faith, i. e., based upon such impermissible considerations as race, religion, or the desire to prevent his exercise of constitutional rights."

---

**3.** See *United States v. Swanson,* 509 F.2d 1205, 1208, n. 6 (8th Cir. 1975).

Bringing "selective prosecution" into even sharper focus in the dimension of discovery, the Court of Appeals in *United States v. Cammisano*, 546 F.2d 238, 241 (8th Cir. 1976), held: "[M]ere allegations of selective prosecution do not authorize a defendant to engage in a fishing expedition for government documents. Before a defendant will be allowed to subpoena documentary evidence related to a selective prosecution defense, the party must first show a 'colorable basis' for the claim."

Drawing on the principles iterated above, defendant failed to establish or show a "colorable basis" for disclosure of the prison and prosecution records in question because he neither alleged in his motion nor testified at the hearing held thereon that he was invidiously selected for prosecution because of his race or religion, or to prevent his exercise of a constitutional right. Although defendant testified that he knew of his own knowledge that some prisoners who escaped were not prosecuted, that, standing alone, fell short of establishing or showing a "colorable basis" entitling him to disclosure of the prison and prosecution records which were the subject of his motion.

Rule 25.33(A), now Rule 25.04(A), under which defendant's motion was filed, provides that "[t]he defense may make a written motion ... requesting the state to disclose material and information not covered by Rule 25.32 ... [s]uch motion shall specify the material or information sought to be disclosed ... [i]f the court finds the request to be *reasonable*, the court shall order the state to disclose to the defendant that material and information requested *which is found by the court to be relevant and material to the defendant's case.*" (Emphasis added.) It is unnecessary to pass judgment upon the reasonableness of defendant's request for disclosure of the escape and prosecution records. Defendant's failure to establish or show a·"colorable basis" for their disclosure, for the reason heretofore mentioned, would justify a finding by the trial court that they were not "relevant and material to the defendant's case". Therefore, the trial court did not err or abuse its discretion in denying defendant's request for disclosure of the prison records in question.

Judgment affirmed.

All concur.

